IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW R. PERRONG<br>1657 THE FAIRWAY #131<br>JENKINTOWN, PA 19046<br><br>      Plaintiff<br><br>vs.<br><br>CHASE DATA CORP.<br>f/k/a<br>PERSONAL INJURY LEAD GENERATOR<br>900 SOUTH PINE ISLAND ROAD #390<br>PLANTATION, FL 33324,<br><br>DIALED IN INC.<br>900 SOUTH PINE ISLAND ROAD #390<br>PLANTATION, FL 33324,<br><br>AND<br><br>AHMED MACKLAI<br>620 CARDINAL STREET<br>PLANTATION, FL 33324<br><br>      Defendant. | Case No. 2:22-cv-02628-GJP<br><br>JURY TRIAL DEMANDED |

**AMENDED COMPLAINT**

**Preliminary Statement**

    1.    Plaintiff Andrew R. Perrong ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

1

2. Through subpoenas issued in this action, the Plaintiff identified the last known "hop" in the illegal calling conduct complained of herein as Defendants Chase Data Corp., its sister company Dialed In Inc., and their joint owner, Ahmed Macklai.

3. The Plaintiff never consented to receive such messages, which were placed to him for telemarketing purposes.

## Parties

4. Plaintiff Andrew R. Perrong is a Pennsylvania resident, and a resident of this District.

5. Defendants operate an illegal robocalling, predictive dialing, and telemarketing platform used by yet-unidentified bad actors to send calls in violation of the TCPA. Defendants are liable for the actions of such actors because they are so involved in placing the illegal telephone calls so as to have essentially placed the calls themselves, including by providing a "turnkey" calling solution with the requisite assistance to illegal call centers that make calls in violation of the TCPA. Defendants further assist these call centers by refusing to respond to lawfully-issued subpoenas seeking the identity of the same and shielding them from being held to account for their wrongdoing under the TCPA.

## Jurisdiction & Venue

6. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated messages to the Plaintiff were placed into this District.

**The Telephone Consumer Protection Act**

8.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits all Automated Calls To Protected Numbers

9.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

10.     Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Perrong's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

11.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

12. Under the TCPA, a text message is treated as a call. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

13. The TCPA provides a private cause of action to persons who receive messages in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged. *See Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013).

15. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes telemarketing messages. *See* FCC Enforcement Advisory: *Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

**Factual Allegations**

16. Defendants collectively own and operate a telephone platform service provider that provides turnkey calling and texting services, including illegal call center predictive dialing and automated calling and texting software, for illegal call centers worldwide.

17. To obtain clients and competitively market their services, Defendants boast their intimate connection with the call centers that place illegal telemarketing calls. Defendants host all the requisite computer software to enable illegal automated calling. Furthermore, Defendants boast that they will hold their customers' hands when it comes to using their platform. *See Call*

4

*Center Predictive Dialer Solutions*, DIALEDIN BY CHASEDATA, https://getdialedin.com/call-center-solutions/#outsourcing-call-centers [https://archive.ph/MkXYA].

18. Defendants' involvement in their customers' illegal calling conduct goes far beyond merely providing the platform that enables them to do so. In addition to actually setting up and providing intimate support for their customers' campaigns, Defendants also shield their customers from direct TCPA liability by failing to respond to lawfully-issued subpoenas demanding their customers' identities conducting illegal calling conduct using their platform.

19. Of relevance here, the Defendants provided telemarketing platform services to a telemarketer and lead generator that places automated, pre-recorded text messages for the purpose of generating leads it sells to personal injury attorneys.

20. To generate the leads it sells, this lead generator relies on automated texting.

21. One of the strategies used by this lead generator and other customers of Defendants involves the use of pre-recorded and pre-programmed text messages made possible through the use of Defendants' platform.

The Calls to Mr. Perrong

22. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

23. Plaintiff's telephone number (the "Number"), 215-947-XXXX, is on the National Do Not Call Registry and has been continuously since 2005.

24. Despite this registration, the lead generator sent three automated, prerecorded telemarketing text messages to Plaintiff through Defendants' platform on March 22, 29, and 30, 2022.

25. The Number is assigned to a Voice over Internet Protocol (VoIP) telephone service, which allows for voice calls to be placed over a broadband Internet connection.

26. That Number, which is assigned to a VoIP telephone service, is charged for each call and text message it receives.

27. The VoIP telephone service for the Number is Anveo.

28. The service charges a charge of $0.01 for each block of 160 character text messages sent to the Number.

29. The Number is therefore "assigned to a . . . service for which the called party is charged for the call" and any call placed to that number are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

30. On March 22, 2022 at 11:02 AM, the Plaintiff received the following text message from the caller ID 659-210-8059: `Hello!! Alexandra. Office: 1-855-866-6761 -- Couldyou call me so we can go over your potential injryclaim/settlment? Thank you! 'STOP' to stop.`

31. On March 29, 2022 at 12:34 PM, the Plaintiff received the following text message from the caller ID 659-242-1102: `It'sAndrea Y.. -Office: 1-855-547-1025 - Plscall me please so we can go over your previous injry-details? You may be entitled some-compensation 'STOP' to stop`

32. On March 31, 2022 at 2:05 PM, the Plaintiff received the following text message from the caller ID 659-210-1991: `It'sSheri. -OL: 1-855-334-5023 - Give me call pls, so we can go over your previous injry-details? U may be entitled some-compensation 'STOP' to stop`

33. When the various 855- telephone numbers are called, an identical pre-recorded message plays asking the caller to confirm that they were injured and would like to speak with a personal injury lawyer by pressing 1. However, this action only transfers the Plaintiff to an

6

overseas call center who will not identify themselves or transfer the Plaintiff to an attorney responsible for the calls without specific details about an injury.

34. Upon information and belief, this conduct is deliberate and done to conceal the identity of the lead generator sending the illegal messages and the attorneys hiring their services.

35. A subpoena issued to the telephone providers for each of these numbers identified that the calls were placed by accounts owned and operated by Defendants Chase Data Corp and Macklai. The subpoena also identified Defendant Macklai as the point of contact and owner of record for the accounts. Additionally, the subpoena identified an Israeli company, SMSEdge, as also being involved in the calls. SMSEdge, upon information and belief, resells services to Chase Data, which Chase Data ultimately sells to its customers.

36. The lead generator uses services provided by Defendants Chase Data, Dialed In, and Macklai to send out the text message blasts, such as the ones Plaintiff relieved, *en masse* in the hopes of reaching a person with an injury in need of an attorney.

37. When a person receives the message and calls the number in the message, they are asked to confirm that they are injured and need an attorney, presumably to avoid wasting the time of Lead Generator's agents from persons angry about receiving unsolicited calls.

38. Moreover, Lead Generator's agents will require detailed information from the caller regarding the injury before selling the lead. Lead Generator them sells the lead, complete with case information, to an attorney who specializes in that particular injury. In this way, Lead Generator can maximize the price it sells its lead at, which is sold to the highest bidding attorney.

39. The entire calling campaign and use of multiple corporations described herein is part of a sophisticated web of untraceable entities designed to conceal the illegal calling conduct complained of herein and make it as difficult as possible to identify a viable defendant.

40. Indeed, Chase Data's entire business model operates on this design, by providing a turnkey solution to call centers though a shell company, Dialed In, and refusing to identify said customers when said customers commit illegal acts using their platform.

41. The FCC has consistently held that a robocall platform provider involved in the calling conduct, like Defendants, may be "deemed to have initiated [the calls], considering the goals and purposes of the TCPA." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order*, 30 FCC Rcd 7961, 7980 (2015).

42. Courts have consistently applied this principle of platform liability to other providers, like Defendants, that provide the average end user the ability to send prerecorded robocalls using their platform, and held such providers liable under it, just as if they had placed the calls themselves. *Cunningham v. Montes*, 378 F. Supp. 3d 741, 750 (W.D. Wis. 2019) (holding owner of calling platform personally liable for the actions of its clients); *Spiegel v. EngageTel Inc.*, 372 F. Supp. 3d 672, 682, 686 (N.D. Ill. 2019) (denying summary judgment for defendant on platform issue).

43. Defendant Ahmed Macklai was at all times relevant the Chairman of *both* Chase Data and Dialed In and is therefore responsible for any conduct purportedly carried out only in such names.

44. Under the TCPA, an individual such as Macklai may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47 U.S.C. § 217 (emphasis added).

45. Macklai personally participated in the actions complained of by: (a) personally enforcing a policy of refusing to respond to subpoenas directed to his companies requesting that he identify his customers; (b) personally marketing and promoting his platform as a turnkey solution for illegal telemarketing conduct; (c) personally selecting the vendors though which illegal calls would be made, including SMSEdge, a shadowy Israeli corporation, and Commio, a "rogue" telephone provider that has been disciplined by the FCC for allowing its customers to send illegal robocall traffic; (d) personally generating business from and personally supporting illegal call centers to use the platform; (f) personally providing support resources for the calls, including oversight and managerial support as the chairman of both entities; and (g) being the sole point of contact for telephone providers to use and being the sole responsible person for the telephone accounts that placed the illegal calls at issue.

46. Defendants sent their messages to the Plaintiff despite the fact that the Number was on the National Do Not Call Registry and without demanding any assurances that the calls were scrubbed against the Registry from their customers. They knowingly turned a blind eye to the fact that their customers were violating the Registry.

47. Nowhere in the messages nor in the calls to the call center is the true identity of Defendants' customer, nor indeed the Defendants, identified.

48. In addition, the messages were sent using an Automatic Telephone Dialing System (ATDS) because it would be incongruous for a human to send multiple messages *en masse* soliciting personal injury clients and request that persons call a specific number, only to play the called party a recorded message and seek confirmation that the person is indeed injured. Defendants expressly advertise the ATDS functionality of their system via their website, including the ability to blast dial and text numbers.

49. The messages were plainly prerecorded voices as they were completely impersonalized and read like typical spam emails sent using an identical script.

50. The Plaintiff never provided his consent or requested these messages.

51. Based on the foregoing facts, it is evident that Defendants do not maintain Do Not Call policies and procedures as required by law, nor do they maintain an internal Do Not Call list. In fact, their entire business model is antithetical to doing so, as they will not even respond to lawfully issued subpoenas.

52. The Plaintiff was charged $0.03 for the messages.

53. Plaintiff was harmed by these messages. He was temporarily deprived of legitimate use of storage space for storing the messages and his privacy was improperly invaded. The Plaintiff was charged for the messages. Moreover, they injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

**Legal Claims**

**Count One:
Violation of the TCPA's Prohibition Against Automated Calling
Via Pre-Recorded Message**

54. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

55. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending messages, except for emergency purposes, to the telephone number of Plaintiff using a prerecorded voice message.

56. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is

entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

58. The Defendants' violations were wilful and/or knowing.

### Count Two:
### Violation of the TCPA's Prohibition Against Automated Calling
### With an Automatic Telephone Dialing System (ATDS)

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls and sending messages, except for emergency purposes, to the telephone number of Plaintiff using an ATDS.

61. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from

violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

63. The Defendants' violations were wilful and/or knowing.

### Count Three:
### Violation of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

64. By placing at least three telemarketing calls/messages to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

65. This amounts to nine violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without having a Do-Not-Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

66. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least nine violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

67. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number

in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

68. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls or sending messages in violation of any of the TCPA's implementing regulations in the future.

69. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

**Relief Sought**

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS, requiring Defendants to respond to subpoenas seeking customer information, and requiring Defendants to ensure that their customers comply with the National Do Not Call Registry and other requirements codified in 47 C.F.R. § 64.1200.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5).

C. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **September 27, 2023**

_____/s/_____
Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com