**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW R. PERRONG | |
| Plaintiff, | Case No. 2:22-cv-02628-GJP |
| vs. | |
| CHASE DATA CORP., DIALED IN INC., AND AHMED MACKLAI | |
| Defendants. | |

**Plaintiff's Response in Opposition To Defendant Ahmed Macklai's Motion to Dismiss**

## Table of Contents

I.  **Introduction** ................................................................................................... 1

II.  **Factual Background** ........................................................................................ 1

III.  **Legal Standard** .............................................................................................. 1

IV.  **Argument** ...................................................................................................... 3

   A.  This Court can exercise specific personal jurisdiction over Defendant Macklai ............... 3

      1.  There is an overwhelming line of precedent supporting the imposition of specific personal jurisdiction in cases like these. ................................................................. 4

      2.  Defendant Macklai's demonstrably false and perjured affidavit further warrants denial of his motion. ........................................................................................... 7

   B.  The TCPA imposes liability in individuals who commit and orchestrate violative conduct. Because the Plaintiff has pled facts supporting these assertions, he has stated a claim upon which relief may be granted. ...................................................................................... 8

V.  **Conclusion** ................................................................................................... 13

## <u>Table of Citations</u>

**Cases**

*Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 WL 6236370 (W.D. Pa. Oct. 24, 2016) ............................................................................................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 2, 3

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................................... 3

*Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 4088205 (W.D. Tex. Sept. 6, 2022) ........................................................................................................ 12

*Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992) ............................... 2

*City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 885 F.3d 154 (3d Cir. 2018) 10, 11

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357 (3d Cir. 1983) ......................................................................................................... 2

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) ................................. 2, 3

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124 (3d Cir. 2020) ............... 4, 6

*Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016) ..................... 12

*Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993)............... 5

*Hanson v. Denckla*, 357 U.S. 235 (1958) ................................................................... 3

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984).............................. 3

*In re DISH Network*, 28 FCC Rcd. 6592-93 ............................................................. 13

*Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137 (W.D. Pa. June 29, 2016) 12

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023) .................................................. 7

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011)........................... 9

*Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451 (N.D. Ill. Sep. 7, 2016) ............................................................................................................... 12

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009)............................. 2

*Montelongo v. My Fin. Solutions LLC*, No. SA-19-CV-00577-JKP, 2020 WL 210814, (W.D. Tex. Jan. 14, 2020) .................................................................................................... 10

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007) ................................. 4

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) ......................................... 2

*Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) ........................................................ 4

*Reynolds Corp. v. National Operator Services, Inc.*, 73 F. Supp. 2d 299 (W.D.N.Y. 1999) ......... 9

*Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019) ..... 5

*Shoemaker v. Zeitlin*, No. 1:21-CV-1668, 2023 WL 3826460 (M.D. Pa. June 5, 2023) ............... 8

*Spurlark v. Dimension Serv. Corp.*, No. 2:21-CV-3803, 2022 WL 2528098 (S.D. Ohio July 7, 2022) ......................................................................................................... 9

*Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) ........................... 9

*Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276 (9th Cir. 1998) ........ 12

*Williams v. Schanck*, No. 5:15-CV-01434-MHH, 2019 WL 4246570 (N.D. Ala. Sept. 6, 2019).. 9

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .................................. 6

**Statutes**

42 PA. CONS. STAT. § 5322 ........................................................................................ 4, 7

47 U.S.C. § 217.......................................................................................................... 8

FED R. CIV. P. 4 ........................................................................................................ 4

FED. R. CIV. P. 12(b)(2) ........................................................................................... 1

FED. R. CIV. P. 12(b)(6) ........................................................................................... 2

**Other Authorities**

Amended Complaint, ECF No. 10................................................................ 1, 4, 5, 8, 10

Complaint, ECF No. 1 ............................................................................................... 1

Defendant's. Brief, ECF No. 16................................................................................ 4, 11

Hon. Gerald Pappert, *Policies and Procedures* ....................................................... 1

## I.   INTRODUCTION

Defendant's Ahmed Macklai's (Macklai or Defendant) hastily drafted, non-compliant,[1] and shoddy motion to dismiss is no model of clarity, referencing at times unremoved boilerplate, for instance, that this matter is proceeding in Montgomery County or on diversity of citizenship grounds, neither of which are accurate. Regardless, the substance of Defendant's motion may be distilled into two arguments: a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and a motion to dismiss for failure to state a claim under Rule 12(b)(6) under the theory that there is no imposition of personal liability for TCPA violations. For the reasons that follow, these contentions are remarkably unsupported and do not warrant dismissal.

## II.   FACTUAL BACKGROUND

The original complaint in this matter was filed on July 1, 2022 against the John Doe entity "personal injury lead generator." (ECF No. 1). Shortly thereafter, the Plaintiff was able to identify the instant Defendants via a duly issued and served subpoena to their telephone service provider. Defendants did not respond to a subpoena issued to them to uncover the identity of any of their customers for whom they provided telemarketing platform services. Thereafter, and as a result of this wilful failure to comply with a lawfully issued subpoena, the Plaintiff sought leave to and amended his complaint on October 11, 2023 to assert claims against Defendants on a theory of platform provider liability under the TCPA. (ECF No. 10). The instant motion follows.

## III.   LEGAL STANDARD

The standards for motions to dismiss under both Rule 12(b)(2) and 12(b)(6) are well-established before this Court. Under Rule 12(b)(2), a party may move to dismiss a complaint for

---

[1] *See* Your Honor's *Policies and Procedures*, Rule II.D.3. (requiring table of contents and table of authorities).

lack of personal jurisdiction. In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well pleaded factual allegations in the plaintiff's favour. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, a Rule 12(b)(2) challenge is unique in that it is not limited to the four corners of the pleading and the Court may consider additional evidence proffered by both parties, including affidavits, evidence, and judicially noticeable records. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). And although the plaintiff will ultimately bear the burden of demonstrating personal jurisdiction at trial, he need not make such a showing at the pleadings stage. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Rather, the Plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. *Id.* And, when claims of jurisdiction are the subject of a good faith dispute, the court must generally permit jurisdictional discovery. *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983).

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

2

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

## IV.    ARGUMENT

A.    *This Court can exercise specific personal jurisdiction over Defendant Macklai*

There exist two types of personal jurisdiction: general and specific. Specific personal jurisdiction exists when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984).

This Court may properly exercise *specific* personal jurisdiction over Defendant Macklai because, although a nonresident defendant, he has committed some act by which "[he] purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Moreover, the Plaintiff's claims here "arise out of or relate to the" Defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414.

As will be described, because the requirements for the exercise of personal jurisdiction over Defendant Macklai are satisfied, his motion must fail. Alternatively, the court should permit jurisdictional discovery or permit the Plaintiff to amend in the event it remains unsatisfied.

1. <u>There is an overwhelming line of precedent supporting the imposition of specific personal jurisdiction in cases like these.</u>

This Court exercises personal jurisdiction over a nonresident defendant of the forum state to the maximum extent authorized by the law of the forum. FED R. CIV. P. 4(e), (k)(1). Pennsylvania's long-arm statute grants specific personal jurisdiction coextensive with the Due Process Clause of the Fourteenth Amendment. 42 PA. CONS. STAT. § 5322(b), *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). And specific personal jurisdiction is assessed on a claim-by-claim basis. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 n.3 (3d Cir. 2007).

In order to successfully plead the existence of specific personal jurisdiction, a plaintiff must allege that (1) the defendants directed their activities at Pennsylvania, (2) the claims arise out of the defendants' contact with Pennsylvania as a forum, and (3) that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129-30 (3d Cir. 2020).

There is little doubt that the first prong of this test is satisfied here. Under Pennsylvania's Long Arm statute, this Court may exercise specific personal jurisdiction over a nonresident defendant by *either* "causing harm or tortious injury by an act or omission in this Commonwealth" *or* "causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 PA. CONS. STAT § 5322(a)(3), (4). The Plaintiff is a resident of Pennsylvania. (Am. Compl. ¶ 4, ECF No. 10). He received the calls and text messages, which were sent using Defendant's platform with Defendant's personal knowledge and personal malfeasance, direction, and control, to his 215- area code telephone number in Pennsylvania. (*Id.* ¶ 23,  45). And, as the Defendant concedes, "the purported injury to the Plaintiff took place in Pennsylvania." (Def's. Br. at 5, ECF No. 16).

4

District Courts throughout Pennsylvania, including this one, have agreed and have held that *identical* allegations are sufficient to give rise to the inference that an "injury" occurs in Pennsylvania when the telephone call is received there. *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019). By directing calls to a Pennsylvania resident possessing a Pennsylvania phone number, Defendant has purposely availed himself of Pennsylvania and its laws. *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." (cleaned up)); *see also Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 WL 6236370, at *4 n.47 (W.D. Pa. Oct. 24, 2016) (collecting TCPA cases imposing personal jurisdiction where the calls were received).

The other cases cited by the Defendant are inapposite because the Plaintiff is not alleging an economic impact argument or attempting to somehow pierce the corporate veil against Defendant Macklai. And, contrary to Macklai's allegations, Plaintiff does not merely draw the line of Macklai's malfeasance at his position as a corporate officer. Rather, he alleges *specific* actions that Macklai took, including by (1) personally shielding the identity of his customers, (2) personally assisting in their placing of illegal calls (even if arguably from Florida), and (3) personally owning the telephone accounts through which the calls were sent, and which injured the Plaintiff in Pennsylvania. (Am. Compl. ¶ 45, ECF No. 10). As the plain text of Pennsylvania's Long Arm statute makes clear, injury to a Pennsylvania resident, even from nonfeasance, is sufficient to impose personal jurisdiction over a nonresident who nevertheless commits an act or omission elsewhere to cause that injury.

The Defendant has cited to *no* TCPA-specific authority holding that there is no personal jurisdiction in the state where a recipient receives a call deliberately directed to that recipient's

in-state phone number. This is for good reason, because no such cases exist. *Every court* to consider the issue in this Circuit has held that there is personal jurisdiction against individuals who place such calls. The other cases cited by the Defendant are all contractual and business disputes with tenuous, if any, real connections to Pennsylvania or the alleged tortfeasor, as contrasted to the case here, where the injury occurred in Pennsylvania to a Pennsylvania resident through specific actions taken by an individual tortfeasor. For instance, unlike in *Keikert*, the Plaintiff received phone calls and text messages in Pennsylvania, which form the subject of the harm. The other cases cited by the Defendant are easily and similarly distinguishable.

The second and third prongs of the test articulated in *Danziger* are satisfied here, as well. There is clearly a logical relationship between the Plaintiff, the Defendant, and the forum for the simple reason that the Plaintiff resides in the forum's boundaries and was injured by the Defendant's conduct here. There is no more logical choice of forum than here. Finally, constitutional notions of fair play and substantial justice are likewise satisfied. The crux of the constitutional "due process analysis" is "foreseeability," "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Id.*

"When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there." *Id.* (cleaned up). As described below, Chase Data is a foreign corporation registered to do business in Pennsylvania. Macklai consciously used his account to terminate telephone calls to Pennsylvania telephone

numbers, and the Plaintiff's case arises out of that very same telemarketing business. Macklai therefore clearly had notice that he would be subject to suit in Pennsylvania arising out of his conduct working for Chase Data, a corporation that not only sent calls into Pennsylvania but was *registered to do business here*. This is even more so than working for a business that tangentially transacts business here or merely sends calls here because, by virtue of its registration with Pennsylvania's Secretary of State, Chase Data consented to *general* personal jurisdiction here. 42 PA. CONS. STAT. §5301(a)(2)(i), *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023).

     2.  <u>Defendant Macklai's demonstrably false and perjured affidavit further warrants denial of his motion.</u>

Defendant Chase Data Corporation is a Florida corporation which is duly registered to do business in the Commonwealth. *See Chase Data Corporation*, PENNSYLVANIA CORPORATION NUMBER 13559306. By virtue of this registration, Macklai consented to Chase Data's general personal jurisdiction in Pennsylvania. 42 PA. CONS. STAT. §5301(a)(2)(i), *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023). Accordingly, it follows that any employee or officer of that company would be subject to or at the very least brought into any suit arising from their work for that company, regardless of whether or not the company's conduct touched Pennsylvania.

Despite this clearly evident fact, Defendant Macklai submitted a demonstrably false and perjured affidavit in support of his motion. There, he stated that "ChaseData is incorporated in the State of Florida and maintains its corporate office in Planation, Florida." That statement is, at best, a half-truth and is at worst a wilful and knowing misrepresentation to this Court. So too are the demonstrably false statements that he "do[es] not pay taxes or receive any income from Pennsylvania." There are only two logical conclusions the Court can draw from this statement:

either Macklai is committing tax fraud by not reporting a registered corporation's Pennsylvania income and filing a Pennsylvania tax return, or he is lying in his affidavit.

But even if this court were to assume *arguendo* that Macklai was a mere officer of Chase Data and conducted none of the specific illegal conduct as alleged in the Plaintiff's complaint, (Am. Compl. ¶ 45, ECF No. 10), such an allegation is not properly the subject of dismissing the complaint for want of personal jurisdiction because it raises a factual dispute not properly brought at the pleading stage. The Middle District of Pennsylvania has refused to do so premised on nearly identical allegations and a self-serving affidavit. *Shoemaker v. Zeitlin*, No. 1:21-CV-1668, 2023 WL 3826460, at *6 n.3 (M.D. Pa. June 5, 2023) ("Defendants argue the claims against Zeitlin should be dismissed for lack of personal jurisdiction because he purportedly has no connection to [the] entities in the amended complaint. . . . . Zeitlin's true relationship with the entities . . . are disputes of fact reserved for resolution by the trier of fact."). In sum, because Macklai's affidavit is demonstrably false and perjured, it should not be given any shred of credibility as to the statements therein. To the extent that this court does credit his statements, it should likewise find that they raise a factual dispute, that the Plaintiff's allegations would give rise to the exercise of personal jurisdiction, and permit them to be evaluated by the factfinder.

B.    *The TCPA imposes liability in individuals who commit and orchestrate violative conduct. Because the Plaintiff has pled facts supporting these assertions, he has stated a claim upon which relief may be granted.*

The Defendant's claim that the TCPA "does not provide for individual liability of a corporate officer" is patently false as a matter of law. The TCPA is part of the Communications Act of 1934, as amended, and the Communications Act contains a *respondeat superior* provision. *See* 47 U.S.C. § 217 ("[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his

employment, shall in every case be also deemed to be the act, omission, or failure of such carrier

or user *as well as that of the person*.") (emphasis added). This provision applies when

"construing and enforcing the provisions of the Communications Act," including the TCPA.

*Reynolds Corp. v. National Operator Services, Inc.*, 73 F. Supp. 2d 299, 305 (W.D.N.Y. 1999).

District Courts across the country have consistently invoked this provision to apply to

employees and corporate officers who have direct, personal involvement in the illegal conduct at

issue, and held that the "any person" language in § 217 applies to all persons, including corporate

officers and employees. *See Williams v. Schanck*, No. 5:15-CV-01434-MHH, 2019 WL

4246570, at *4 (N.D. Ala. Sept. 6, 2019), *Maryland v. Universal Elections*, 787 F. Supp. 2d 408,

415-16 (D. Md. 2011), *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001).

Importantly, the Plaintiff's allegations mirror those in *Spurlark v. Dimension Serv. Corp.*, where

the court imposed personal liability on an individual alleged to be "in charge of AAP's

telemarketing and that he is personally liable for the acts alleged in the Complaint pursuant [sic]

47 U.S.C. § 217." No. 2:21-CV-3803, 2022 WL 2528098, at *5 (S.D. Ohio July 7, 2022).

Plaintiff has alleged *more* than what the *Spurlark* court already held to be sufficient to

impose direct liability on an individual under the TCPA. The Plaintiff does not merely plead

Macklai is liable solely because he is an officer. Specifically, the Plaintiff alleged six specific

actions which Defendant took, any one of which is sufficient to impose personal liability:

> (a) personally enforcing a policy of refusing to respond to subpoenas directed to his companies requesting that he identify his customers;
> (b) personally marketing and promoting his platform as a turnkey solution for illegal telemarketing conduct;
> (c) personally selecting the vendors though which illegal calls would be made, including SMSEdge, a shadowy Israeli corporation, and Commio, a "rogue" telephone provider that has been disciplined by the FCC for allowing its customers to send illegal robocall traffic;
> (d) personally generating business from and personally supporting illegal call centers to use the platform;

9

(f) personally providing support resources for the calls, including oversight and managerial support as the chairman of both entities; and

(g) being the sole point of contact for telephone providers to use and being the sole responsible person for the telephone accounts that placed the illegal calls at issue.

Am. Compl. ¶ 45, ECF No. 10

And direct personal liability under the TCPA is not limited to specific actions but omissions as well, as the plain text of § 217 makes clear. In *Montelongo v. My Fin. Solutions LLC*, for instance, the plaintiff sued a call centre employee who did not place the plaintiff on a do-not-call list and the employee's manager who was responsible for "developing strategies to make unsolicited telemarketing calls" and "responsible for receiving, maintaining, investigating and responding to complaints about TCPA violations." No. SA-19-CV-00577-JKP, 2020 WL 210814, at *3 (W.D. Tex. Jan. 14, 2020). Again, it is trivial to see how the Plaintiff's allegations here mirror and in fact exceed the minimum level in *Montelongo*. Finally, it should also be noted that in both *Spurlark* and *Montelongo*, the individual defendants, as here, raised personal jurisdiction challenges, both of which the respective courts rejected.

The case of *City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 885 F.3d 154, 159–62 (3d Cir. 2018), is distinguishable and does not warrant dismissal of Plaintiff's claims. All *City Select* stands for is the proposition that a plaintiff must allege that a corporate officer alleged to have personally violated the TCPA must plead that that person either had direct, personal participation in the conduct alleged to have violated the TCPA or personally authorized it. *Id.* at 162. In other words, a plaintiff cannot succeed on a direct individual TCPA liability theory merely by alleging that a corporate officer oversaw illegal marketing conduct. Simply put, mere allegations of negligent or want of supervision (or, conversely, mere knowledge of TCPA-volative conduct), is not enough; a plaintiff must demonstrate personal involvement.

That conclusion is nothing new, and it's exactly what Plaintiff does, just like in both *Spurlark* and *Montelongo*. In fact, the Plaintiff does more by specifically stating that Macklai was the *only person* listed on the account and listed as the responsible individual for the telephone numbers that called him. *City Select* found no personal liability after a jury trial on mixed evidence as to the defendant's personal involvement in the conduct alleged. Unsatisfied by the fact that the jury did not see it their way (perhaps by a lack of evidence, unlike here, where the Defendant's name is on the phone bill), the plaintiff sought to lower the standard to something lower than personal involvement akin to negligent supervision, which the Third Circuit declined to do. *Id.* at 159. The issue of "capacity" is only relevant to a case where there is not alleged to be personal involvement beyond being the so-called "captain of the ship." That's not what is alleged here, not the least reason of which is the Defendant's name is on the bill.

The Third Circuit did not address or impose a standard as to the level of involvement required to trigger personal liability. Rather, it addressed the propriety of a jury instruction requiring personal involvement in the illegal conduct. *Id.* at 162. Plaintiff's claims against Macklai here sound not merely "exclusively on his role as a corporate officer for ChaseData and DialedIn." (Br. at 11, ECF No. 16). Rather, as articulated above, the Plaintiff alleged six *specific* actions that Macklai took *personally* which violated the TCPA. That those actions also happened to be taken in his capacity as a corporate officer is of no consequence. As *City Select* counsels, the Plaintiff must allege *specific conduct* that the defendant had *direct personal participation* in. He has done so, and he has therefore stated a claim. In fact, the Plaintiff has alleged perhaps the greatest smoking gun there is–that Macklai's *name*, and nobody else's, *was on the account* that placed the illegal calls. If having your name on the account that placed the illegal calls is insufficient to trigger personal liability under the TCPA, than nothing is.

11

Finally, Defendant's vicarious liability arguments can be summarily disposed of. As described above, the TCPA imposes direct, personal liability when an individual has been directly involved in or participated in some act or omission which violates the TCPA. But even if this Court were to dive into a vicarious liability analysis (which the Court need not do because there is direct liability), Macklai is liable under theories of actual authority, apparent authority, and ratification. These vicarious liability principles apply to an individual who participated in the violative conduct, even when the individual did not directly commit the violative conduct or even place the calls at issue. *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 4088205, at *6–7 (W.D. Tex. Sept. 6, 2022) (imposing vicarious personal liability on an individual insurance agent who was responsible for writing an insurance policy based on an illegal call initiated by an unrelated, unnamed caller).

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc*., No. CV 14-1050, 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016). The existence of an agency relationship is normally one for the trier of fact to decide. *See Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276, 1283 (9th Cir. 1988). Moreover, "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016). And a 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of [agency] relationships . . . through discovery, if they are not independently privy to such information." *In*

*re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

And here, the Plaintiff has pled sufficient facts to infer an agency relationship, or at the very least, facts sufficient to permit discovery into any vicarious liability issues. Defendant does not address or explain how his own name was listed as the only point of contact for the numbers that placed the calls and text messages. If the court rejects direct liability on this basis, this fact alone demonstrates at the very least ratification, if not actual authority. So too does Macklai's wilful disobedience to a court order directing his company to disclose the name of the clients he helped place the illegal marketing calls and provided services to, something he has still refused to do. Nor has Macklai contested the Plaintiff's allegation that he provided substantial assistance in promoting his platform, selecting the vendors that would be used to place the telephone calls, or personally assist in technical issues. At the very least, if the Court finds no direct TCPA liability as to Macklai (which there assuredly is), this Court should nevertheless conclude that the facts pled here give rise to the inference of some agency relationship and permit discovery.

## V.   Conclusion

This Court must deny Defendants' motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies or permit both jurisdictional and liability-based discovery, as necessary.

Dated: November 30, 2023

s/ Andrew R. Perrong, Esq.
Andrew R. Perrong, Esq.
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

13