**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANDREW R. PERRONG

               Plaintiff,

     vs.

CHASE DATA CORP., DIALED IN INC., AND
AHMED MACKLAI

           Defendants.

Case No. 2:22-cv-02628-GJP

**Plaintiff's Response in Opposition To Defendants Dialed In Inc and Chase Data's
Amended Motion to Dismiss**

## Table of Contents

I.      **Introduction** ................................................................................................. 1

II.     **Factual Background** ...................................................................................... 1

III.    **Legal Standard** ............................................................................................. 2

IV.     **Argument** ....................................................................................................... 3

    A.   Dialed In is the successor to Defendant Chase Data and is liable for Chase Data's conduct because it is the "mere continuation" of Chase Data. ................................................. 3

    B.   This Court can exercise personal jurisdiction over Defendant Dialed In both as a successor and based on its conduct. ........................................................................... 6

        1.   As a successor to Chase Data, which is subject to general personal jurisdiction in Pennsylvania, Dialed In is likewise subject to general personal jurisdiction in Pennsylvania. 7

        2.   There is an overwhelming line of precedent supporting the imposition of specific personal jurisdiction in cases like these. ............................................................... 8

    C.   Defendant Chase Data's speculative denials of liability can be quickly disposed of because the Plaintiff has pled adequate facts giving rise to both direct or vicarious liability. . 11

V.      **Conclusion** .................................................................................................. 14

## Table of Citations

**Cases**

*Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 WL 6236370 (W.D. Pa. Oct. 24, 2016) ................................................................................................................ 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 3

*Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455 (3d Cir. 2006) ......................... 3, 4

*Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047 (Fla. 1982) .............................................. 3

*Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451 (11th Cir. 1985) ............................. 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................................... 7

*Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 4088205 (W.D. Tex. Sept. 6, 2022) ............................................................................................................... 13

*Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992) .............................. 2

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357 (3d Cir. 1983) ............................................................................................................... 2

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) ................................... 2, 3

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124 (3d Cir. 2020) ............. 9, 10

*Davlyn Mfg. Co. v. H&M Auto Parts, Inc.*, 414 F. Supp. 2d 523 (E.D. Pa. 2005) ........................ 7

*Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016) ..................................... 14

*Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir. 1993) .............................. 9

*Hammersmith v. TIG Ins. Co.*, 480 F.3d 220 (3d Cir. 2007) ......................................... 4

*Hanson v. Denckla*, 357 U.S. 235 (1958) .................................................................... 7

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984) ............................ 7

*In re DISH Network*, 28 FCC Rcd. 6592-93 ................................................................. 14

*Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137 (W.D. Pa. June 29, 2016) ... 13

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023) ................................................... 8

*Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451 (N.D. Ill. Sep. 7, 2016) ........................................................................................................................ 14

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009) .............................. 2

*Metro Container Grp. v. AC&T Co.*, No. CV 18-3623, 2021 WL 5804374, (E.D. Pa. Dec. 7, 2021) ..................................................................................................................................... 8

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007) ................................... 8

*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640 (5th Cir. 2002). ........................ 3, 4, 8

*Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir. 1985) ........................... 3

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) .......................................... 2

*Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) ......................................................... 8

*Rivers v. Stihl, Inc.*, 434 So. 2d 766 (Ala. 1983) ........................................................... 6

*Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019) ..... 9

*Shoemaker v. Zeitlin*, No. 1:21-CV-1668, 2023 WL 3826460 (M.D. Pa. June 5, 2023) .............. 12

*Thomas-Fish v. Aetna Steel Prod. Corp.*, No. 17-CV-10648 RMB/KMW, 2019 WL 2354555 (D.N.J. June 4, 2019) ........................................................................................................ 8

*Tracey by Tracey v. Winchester Repeating Arms Co.*, 745 F. Supp. 1099 (E.D. Pa. 1990) ........... 4

*Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276 (9th Cir. 1988) ........ 13

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .............................. 11

**Statutes**

42 PA. CONS. STAT. § 5322 .............................................................................................. 8, 9

FED R. CIV. P. 4 ................................................................................................................ 8

FED. R. CIV. P. 12(b)(2) ................................................................................................... 2

FED. R. CIV. P. 12(b)(6) ................................................................................................... 2

**Other Authorities**

Amended Complaint, ECF No. 10 ............................................................................... 1, 9

*Chase Data Corporation*, PENNSYLVANIA CORPORATION NUMBER 13559306 .............................. 8

iv

Complaint, ECF No. 1 ................................................................................................ 1

Defendants' Brief, ECF No. 17.................................................................................. 5, 9

*DialedIn, Inbound and Outbound Call Center Solutions,* DIALEDIN ............................................ 5

*Learn More About ChaseData Corp Software*, INTERNET ARCHIVE .............................................. 5

*Learn More About DialedIn Software*, DIALEDIN .......................................................... 5

## I.   INTRODUCTION

Defendants' Chase Data and Dialed In's amended motion to dismiss is no model of clarity, referencing at times unremoved boilerplate, for instance, that this matter is proceeding on diversity of citizenship grounds, which is inaccurate. Regardless, the substance of Defendants' motion may be distilled into two arguments: Dialed In[1] raises a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and a motion to dismiss for failure to state a claim under Rule 12(b)(6) because it was not an entity at the time of the alleged calls and did not place them. Chase Data moves to dismiss under Rule 12(b)(6) because it contends the Plaintiff has not alleged sufficient facts for it to be held liable. For the reasons that follow, these contentions themselves are remarkably unsupported and do not warrant dismissal.

## II.   FACTUAL BACKGROUND

The original complaint in this matter was filed on July 1, 2022 against the John Doe entity "personal injury lead generator." (ECF No. 1). Shortly thereafter, the Plaintiff was able to identify the instant Defendants via a duly issued and served subpoena to their telephone service provider. Defendants did not respond to a subpoena issued to them to uncover the identity of any of their customers for whom they provided telemarketing platform services. Thereafter, and as a result of this wilful failure to comply with a lawfully issued subpoena, the Plaintiff sought leave to and amended his complaint on October 11, 2023 to assert claims against Defendants on a theory of platform provider liability under the TCPA. (ECF No. 10). The instant motion follows.

---

[1] Plaintiff's complaint and corporate registration documents indicate that the proper entities are "Chase Data" and "Dialed In," with spaces. However, Defendants' website and materials use the words with the spaces closed up. Plaintiff will refer to the closed-up versions when they are used verbatim in that manner by Defendants but otherwise refer to the legal, spaced form.

### III.    LEGAL STANDARD

The standards for motions to dismiss under both Rule 12(b)(2) and 12(b)(6) are well-established before this Court. Under Rule 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well pleaded factual allegations in the plaintiff's favour. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, a Rule 12(b)(2) challenge is unique in that it is not limited to the four corners of the pleading and the Court may consider additional evidence proffered by both parties, including affidavits, evidence, and judicially noticeable records. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). And although the plaintiff will ultimately bear the burden of demonstrating personal jurisdiction at trial, he need not make such a showing at the pleadings stage. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Rather, the Plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. *Id.* And, when claims of jurisdiction are the subject of a good faith dispute, the court must generally permit jurisdictional discovery. *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983).

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must

2

contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

**IV.    ARGUMENT**

A.    *Dialed In is the successor to Defendant Chase Data and is liable for Chase Data's conduct because it is the "mere continuation" of Chase Data.*

Both Pennsylvania and Florida law impose liability on a successor business entity under a "continuation of business" theory. Under this theory, the liabilities of a predecessor corporation can be imposed upon a successor corporation when the successor is a "mere continuation" of the predecessor. *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308 (3d Cir. 1985); *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982). In determining whether a successor company is a continuation of a predecessor company, the Third Circuit looks to multiple factors, including whether or not there is a "continuity of management, personnel, physical location, assets, and general business operations" between both companies. *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 468 (3d Cir. 2006); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 650 (5th Cir. 2002). The Third Circuit will also consider whether the seller corporation ceased its ordinary business operations and if the purchasing corporation consequently picks up where the

3

seller left off in taking steps "ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." *Berg*, 435 F.3d at 468–69.

 And the Third Circuit has indicated that the "key element" of the "mere continuation" doctrine is a "common identity of stock, directors and stockholders in the selling and purchasing corporations," but also stated that this requirement is not mandatory. *Berg*, 435 F.3d at 468–69; *Tracey by Tracey v. Winchester Repeating Arms Co.*, 745 F. Supp. 1099, 1110 (E.D. Pa. 1990), aff'd, 928 F.2d 397 (3d Cir. 1991) (citing cases). In sum, a corporation is a "mere continuation" of a predecessor when there is essentially the same "identity of assets, location, management, personnel, and stockholders." *Id.; Patin*, 294 F.3d at 650.

Moreover, no conflict of laws analysis is necessary since the standard for the "mere continuation" is essentially the same under the common law of both jurisdictions. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (holding that the first step in a conflict of law analysis requires determination of whether an actual or real conflict exists between the laws of the jurisdictions at issue).

There can be no question that Defendant Dialed In is the "mere continuation" of Defendant Chase Data. This fact is readily ascertainable from an identical "identity of assets, location, management, personnel, and stockholders." in the form of Dialed In's own information and declarations. *Patin*, 294 F.3d at 650. Indeed, as a preliminary matter, Chase Data's website, chasedatacorp.com, simply operates as a "redirect" to getdialedin.com and lists the same physical address, lending credence to the fact that Dialed In picked up where Chase Data left off. Furthermore, prominently displayed on that website is a logo stating "DialedIn by ChaseData.:"

4



*DialedIn, Inbound and Outbound Call Center Solutions,* Dialedin, https://getdialedin.com/ [https://archive.is/wyX4V]

That Dialed In is a "mere continuation" of Defendant Chase Data is further confirmed though an analysis of Dialed In's "About Us" page. Here, Dialed In states that "DialedIn", "formerly ChaseData" has been "focused on designing . . . call center software . . . for two decades." *Learn More About DialedIn Software*, Dialedin, https://getdialedin.com/about/ [https://archive.is/cMvSH]. How a less than a year-old corporation can design software for two decades is a mystery to Plaintiff, unless of course Dialed In is a mere continuation of Defendant Chase Data. (Def's. Br. at 10, ECF No. 17). Defendant's website admits the obvious.

Moreover, Defendants' directors and "team" are identical, further supporting the inevitable conclusion that Dialed In is the "mere continuation" of Chase Data. *Compare Learn More About DialedIn Software*, Dialedin, https://getdialedin.com/about/ [https://archive.is/cMvSH] (listing Defendant Macklai along with Stanislav Doronin, Guillermo Sandoval, and Dan Cleary) *with Learn More About ChaseData Corp Software*, Internet Archive (archived December 5, 2022), https://web.archive.org/web/20221205122217/https://www.chasedatacorp.com/about (listing

same individuals). Looking to the other content on this page, the website design, layout, and content are all almost identical, merely cutting and replacing "ChaseData" for "DialedIn" at various locations.

This additional evidence of the directors and organizational structure of both entities demonstrates, or at the very least gives rise to the inference, that there is a "common identity of the officers, directors, and stockholders in the selling and purchasing corporations." *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1459 (11th Cir. 1985). This is so beyond the other evidence presented here, which further demonstrates that Dialed In is a mere continuation of Chase Data based on evidence of a "basic continuity of enterprise." *Rivers v. Stihl, Inc.*, 434 So. 2d 766, 771 (Ala. 1983) (citing cases).

In sum, then, there is no question that Dialed In is the mere continuation of Chase Data. It is therefore liable for the tortious conduct described in the complaint, just as if it had been committed by Dialed In itself, and not just by Chase Data. This Court should reject Dialed In's attempt to escape liability through a smoke-and-mirrors game of corporate sophistry which ignores the substantial evidence demonstrating that Dialed In continued in harassing telephone consumers throughout the United States where Chase Data left off. In the event this Court remains unsatisfied based on this overwhelming evidence, the Court should order discovery into the nature and structure of how Dialed In is not "formerly" Chase Data.

B.    *This Court can exercise personal jurisdiction over Defendant Dialed In both as a successor and based on its conduct.*

There exist two types of personal jurisdiction: general and specific. Specific personal jurisdiction exists when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those

activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General personal

jurisdiction exists when the defendant's contacts with the forum, whether or not related to the

litigation, are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466

U.S. 408, 416 (1984).

      This Court may properly exercise both *general and specific* personal jurisdiction over

Defendant Dialed In. First, it may properly exercise *general* personal jurisdiction over Dialed In

because its predecessor, Chase Data, is subject to *general* personal jurisdiction in Pennsylvania.

Second, even if this Court declines to exercise general personal jurisdiction over Defendant

Dialed In in Pennsylvania, it may nevertheless exercise *specific* personal jurisdiction over Dialed

In because, although a nonresident defendant, it has committed some act by which "[it]

purposefully avail[ed] [itself] of the privilege of conducting activities within the forum State."

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Moreover, the Plaintiff's claims here "arise out of

or relate to the" Defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414.

      As will be described, because the requirements for the exercise of personal jurisdiction

over Defendant Dialed In are satisfied, its motion must fail. Alternatively, the court should

permit jurisdictional discovery or permit the Plaintiff to amend in the event it remains

unsatisfied.

   1.  <u>As a successor to Chase Data, which is subject to general personal jurisdiction in
Pennsylvania, Dialed In is likewise subject to general personal jurisdiction in
Pennsylvania.</u>

      Courts in the Third Circuit have uniformly held that a Court may assert *specific* personal

jurisdiction over a defendant on a successor liability theory, provided that the Plaintiff makes a

*prima facie* showing of facts which would support successor liability. *Davlyn Mfg. Co. v. H&M

Auto Parts, Inc.*, 414 F. Supp. 2d 523, 531–32 (E.D. Pa. 2005); *Thomas-Fish v. Aetna Steel Prod.*

*Corp.*, No. 17-CV-10648 RMB/KMW, 2019 WL 2354555, at *2 (D.N.J. June 4, 2019). And, provided that successor liability is established, a court will generally "impute" the requisite jurisdictional requirements upon the successor entity, especially when the predecessor "consented" to personal jurisdiction, such as through contract. *Patin*, 294 F.3d at 653. And this Court has been receptive to an identical argument when the predecessor company is alleged to have been subject to *general* personal jurisdiction in a forum. *Metro Container Grp. v. AC&T Co.*, No. CV 18-3623, 2021 WL 5804374, at *7 (E.D. Pa. Dec. 7, 2021).

Defendant Chase Data Corporation is a Florida corporation which is duly registered to do business in the Commonwealth. *See Chase Data Corporation*, PENNSYLVANIA CORPORATION NUMBER 13559306. By virtue of this registration under Pennsylvania law, Chase Data *consented* to general personal jurisdiction in Pennsylvania. 42 PA. CONS. STAT. §5301(a)(2)(i); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023). Accordingly, as the predecessor of Dialed In, this Court should have no trouble imputing Chase Data's general personal jurisdiction on its successor, Dialed In. Because Chase Data was not only *subject* to general personal jurisdiction here but also *consented* to general personal jurisdiction here, Dialed In is, too.

2.  <u>There is an overwhelming line of precedent supporting the imposition of specific personal jurisdiction in cases like these.</u>

This Court exercises personal jurisdiction over a nonresident defendant of the forum state to the maximum extent authorized by the law of the forum. FED R. CIV. P. 4(e), (k)(1). Pennsylvania's long-arm statute grants specific personal jurisdiction coextensive with the Due Process Clause of the Fourteenth Amendment. 42 PA. CONS. STAT. § 5322(b), *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). And specific personal jurisdiction is assessed on a claim-by-claim basis. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 n.3 (3d Cir. 2007).

In order to successfully plead the existence of specific personal jurisdiction, a plaintiff must allege that (1) the defendants directed their activities at Pennsylvania, (2) the claims arise out of the defendants' contact with Pennsylvania as a forum, and (3) that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129-30 (3d Cir. 2020).

There is little doubt that the first prong of this test is satisfied here. Under Pennsylvania's Long Arm statute, this Court may exercise specific personal jurisdiction over a nonresident defendant by *either* "causing harm or tortious injury by an act or omission in this Commonwealth" *or* "causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 PA. CONS. STAT § 5322(a)(3), (4). The Plaintiff is a resident of Pennsylvania. (Am. Compl. ¶ 4, ECF No. 10). He received the calls and text messages, which were sent using Dialed In's predecessor platform, to his 215- area code telephone number in Pennsylvania. (*Id.* ¶ 23,  45). And, as Dialed In concedes, "the purported injury to the Plaintiff took place in Pennsylvania." (Def's. Br. at 10, ECF No. 17).

District Courts throughout Pennsylvania, including this one, have agreed and have held that *identical* allegations are sufficient to give rise to the inference that an "injury" occurs in Pennsylvania when the telephone call is received there. *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019). By directing calls to a Pennsylvania resident possessing a Pennsylvania phone number, Dialed In has purposely availed itself of Pennsylvania and its laws. *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." (cleaned up)); *see also Abramson v.*

*CWS Apartment Homes, LLC*, No. 16-426, 2016 WL 6236370, at *4 n.47 (W.D. Pa. Oct. 24, 2016) (collecting TCPA cases imposing personal jurisdiction where the calls were received).

The other cases cited by Dialed In are inapposite because the Plaintiff is not alleging an economic impact argument or arguing that it is subject to personal jurisdiction here because the conduct here merely tangentially affected Pennsylvania. As the aforementioned cases make clear, a telephone call directed into a telephone number that is unquestionably associated with Pennsylvania is sufficient to demonstrate express aiming and that the injury occurred in Pennsylvania. As the plain text of Pennsylvania's Long Arm statute makes clear, injury to a Pennsylvania resident, even from nonfeasance, is sufficient to impose personal jurisdiction over a nonresident who nevertheless commits an act or omission elsewhere to cause that injury.

Dialed In has cited to *no* TCPA-specific authority holding that there is no personal jurisdiction in the state where a recipient receives a call deliberately directed to that recipient's in-state phone number. This is for good reason, because no such cases exist. *Every court* to consider the issue in this Circuit has held that there is personal jurisdiction against individuals who place such calls. The other cases cited by Dialed In are all contractual and business disputes with tenuous, if any, real connections to Pennsylvania or the alleged tortfeasor, as contrasted to the case here, where the injury occurred in Pennsylvania to a Pennsylvania resident through specific actions taken by ascertainable tortfeasors. For instance, unlike in *Keikert*, the Plaintiff received phone calls and text messages in Pennsylvania, which form the subject of the harm. The other cases cited by the Defendant are easily and similarly distinguishable.

The second and third prongs of the test articulated in *Danziger* are satisfied here, as well. There is clearly a logical relationship between the Plaintiff, the Defendant, and the forum for the

simple reason that the Plaintiff resides in the forum's boundaries and was injured by the Defendant's conduct here. There is no more logical choice of forum than here. Finally, constitutional notions of fair play and substantial justice are likewise satisfied. The crux of the constitutional "due process analysis" is "foreseeability," "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Id.*

"When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there." *Id.* (cleaned up). Even taking the proffered Declaration of Daniel Cleary at face value, the conducting of business in Pennsylvania is not the *sine qua non* of personal jurisdiction. Chase Data's systems consciously and deliberately permitted the termination of telephone calls to Pennsylvania telephone numbers, and the Plaintiff's case arises out of that very same telemarketing business. As the successor of Chase Data, Dialed In's systems almost certainly do the same.

C.    *Defendant Chase Data's speculative denials of liability can be quickly disposed of because the Plaintiff has pled adequate facts giving rise to both direct or vicarious liability.*

Defendant Chase Data, in essence, adopts in its motion the classic "I didn't do it" defence, but styles it instead as a metaphysical doubt as to the Plaintiff's allegations. But such doubt as to direct or vicarious liability is more properly the subject of a jury trial or at the very least a motion for summary judgment. Notwithstanding the fact that a *subpoena to Defendants' telephone provider* revealed that *Defendants'* account, who had Defendant Macklai's personal

11

name as the responsible person on the account, was used to place the call, Defendant Chase Data incredulously claims that it had nothing to do with the calls alleged and is the wrong defendant entirely because the Plaintiff has not pled every fact to demonstrate an agency relationship of its own manufacture. As explained below, that's not the standard.

But even if this court were to assume *arguendo* that Chase Data committed none of the illegal conduct as alleged in the Plaintiff's complaint (which is demonstrably false because a subpoena indicated that it owned the telephone numbers behind the calls), such an allegation is not properly the subject of dismissing the complaint because it raises a factual dispute not properly brought at the pleading stage. The Middle District of Pennsylvania has refused to do so premised on nearly identical allegations and a self-serving affidavit, which isn't even proffered here. *Shoemaker v. Zeitlin*, No. 1:21-CV-1668, 2023 WL 3826460, at *6 n.3 (M.D. Pa. June 5, 2023) ("Defendants argue the claims against Zeitlin should be dismissed for lack of personal jurisdiction because he purportedly has no connection to [the] entities in the amended complaint. . . . Zeitlin's true relationship with the entities . . . are disputes of fact reserved for resolution by the trier of fact.").

This Court should consider the Plaintiff's own pleadings and evidence in this case, including the subpoena responses, find that they raise a factual dispute, that the Plaintiff's allegations would give rise to direct liability, and permit them to be evaluated by the factfinder. And the Plaintiff need not prove at this stage who made the calls or whether or not they were authorized in order to plead direct, let alone vicarious, liability.

Finally, Defendant Chase Data's vicarious liability arguments can be summarily disposed of. As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendant's involvement in the calls. He has done so, including

12

through subpoenas which identified Defendants. Requiring a putative TCPA plaintiff to allege more, such as requiring the intricacies of an agency relationship or require trial-level proof to show the entity that placed the calls, would eviscerate the TCPA's protection and would simply allow defendants to run rampant with all manner of anonymous and unidentified calls. The Defendant's standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence.

But even if this Court were to dive into a vicarious liability analysis (which the Court need not do because there is direct liability), Chase Data would be liable under theories of actual authority, apparent authority, and ratification as a calling platform. These vicarious liability principles apply to a company who participated in or authorized another entity, like a lead generator or customer, to perform the violative conduct or use its platform, even when the seller did not directly commit the violative conduct or even place the calls at issue. *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 4088205, at *6–7 (W.D. Tex. Sept. 6, 2022) (imposing vicarious personal liability on an individual insurance agent who was responsible for writing an insurance policy based on an illegal call initiated by an unrelated, unnamed caller).

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc*., No. CV 14-1050, 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016). The existence of an agency relationship is normally one for the trier of fact to decide. *See Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276, 1283 (9th Cir. 1988). Moreover, "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill.

2016). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016). And a 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of [agency] relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

And here, the Plaintiff has pled sufficient facts to infer an agency relationship, or at the very least, facts sufficient to permit discovery into any vicarious liability issues. Chase Data does not address or explain how he got calls which subpoenas identified as coming from the Defendants or how it was identified in the subpoena Plaintiff issued. If the court rejects direct liability on this basis, this fact alone demonstrates at the very least ratification, if not actual authority. It does not address why it did not respond to the follow up subpoenas presented to it to uncover any other entities which it contends may be liable. Its failure to do so necessarily dooms its defence of attempting to pawn off liability at the eleventh hour. Discovery will permit the Plaintiff to uncover any additional third parties which may have been involved in the calls and argue as to the respective liability between themselves and Defendants. At the very least, if the Court finds no direct TCPA liability as to Chase Data (which there assuredly is), this Court should nevertheless conclude that the facts pled here give rise to the inference of some agency relationship and permit discovery.

## V.   CONCLUSION

This Court must deny Defendants' motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to

amend to correct the deficiencies or permit structural, jurisdictional, and liability-based

discovery, as necessary.

Dated: December 12, 2023

/s/ Andrew R. Perrong
Andrew R. Perrong, Esq.
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

15