### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW R. PERRONG,

                    *Plaintiff,*

    v.

CHASE DATA CORP., et al.,

                    *Defendants.*

CIVIL ACTION
NO. 22-2628

**PAPPERT, J.**                                                        **January 26, 2024**

### MEMORANDUM

Chase Data Corp., Dialed In Inc. and their owner Ahmed Macklai sell "turnkey" calling and texting services.  Andrew Perrong received three text messages from Chase Data, each one asking him to call a specific phone number and discuss injuries he suffered—purportedly to generate "leads" that can be sold to personal injury attorneys.

Perrong asserts these messages constitute violations of the Telephone Consumer Protection Act and brings three TCPA claims against Chase Data, Dialed In and Macklai, respectively.  Defendants filed multiple motions to dismiss, which collectively seek to dismiss all claims against them.  The Court grants the motions in part and denies them in part, allowing Perrong to amend his pleading as to certain claims.

I

In March 2022, Perrong received three text messages—each from a different caller ID owned and operated by Chase Data—asking him to call a different "855" to talk about his potential injuries and possible compensation.  (*Id.* at ¶¶ 30–33; 35).

1

Perrong claims that when he called the 855 numbers, he heard an identical pre-recorded message "asking to confirm an injury and whether the caller would like to speak with a personal injury lawyer." (*Id.* at ¶ 33). Perrong alleges Chase Data's customers use these messages to generate leads that can be sold to personal injury attorneys. (*Id.* at ¶¶ 19–21).

Perrong, a Pennsylvania resident, has a telephone number that is on the "Do Not Call Registry." (*Id.* at ¶¶ 4, 23). Perrong's number is assigned to a Voice over Internet Protocol service that charges a ring charge of $0.01 for each block of 160-character text messages sent. (*Id.* at ¶¶ 26, 28).

Perrong filed an Amended Complaint asserting three counts against Chase Data, Dialed In and Macklai for alleged violations of specific provisions of the TCPA: (a) 47 U.S.C. § 227(b) which prohibits automated calling by using a pre-recorded message; (b) a separate provision of Section 227(b) which proscribes use of an automatic telephone dialing system (ATDS); and (c) Section 227(c) and three of its implementing regulations.

## II

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though this "plausibility standard is not

akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Step one is to "take note of the elements the plaintiff must plead to state a claim."  *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675).  Next, the Court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, for all "well-pleaded factual allegations, the court should assume their veracity," draw all reasonable inferences from them "and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 679).  If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint.  *Twombly*, 550 U.S. at 570.

III

Section 227(b)(1)(A)(iii) prohibits, with exceptions, making "any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to . . . any service for which the called party is charged for the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii).  A text message is a call under § 227(b)(1)(A).  *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

Section 227(c)(5) provides a private right of action for violations of regulations that the Federal Communications Commission promulgates pursuant to the TCPA.  These regulations, *inter alia*, prohibit soliciting those on the "national do-not-call

registry," and require both a policy to maintain, and the maintenance of, a do-not-call list.  47 C.F.R. § 64.1200 (c)(1); (d)(1), (6).

## IV

### A

Defendants argue Perrong does not plausibly allege Chase Data's direct or vicarious liability under the TCPA.  *See* (Chase Data and Dialed In's Am. Motion to Dismiss, p. 16, ECF No. 17).

### 1

A common carrier can violate the TCPA if it "was so involved in placing the call as to be deemed to have initiated it."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980 (2015). In determining whether entities that provide software applications or platforms that facilitate calling fall within the TCPA's restrictions, the FCC explained that it "look[s] to the totality of the facts and circumstances surrounding the placing of a particular call to determine: (1) who took the steps necessary to physically place the call; and (2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA."  2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7980.

### 2

Perrong alleges Chase Data owned and operated the accounts used to contact his phone.  (Am. Compl. ¶ 35).  Chase Data provides "intimate support for their customers' campaigns" and "hold[s] their customers' hands."  (*Id.* at ¶¶ 17-18).  The totality of these factual allegations give rise to the inference that Chase Data was directly

4

involved in the alleged TCPA violations.[1]  *See Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 U.S. Dist. LEXIS 107936, *14 (W.D. Wash. July 12, 2017) *(*denying motion to dismiss TCPA claim because plaintiff alleged Twilio was an active participant in developing the message, choosing the order and timing of messages and "allowing, if not promoting, unsolicited text message campaigns on its platform."); *compare with Meeks v. Buffalo Wild Wings, Inc.*  No. 17-cv-07129-YGR, 2018 U.S. Dist. LEXIS 52328 (N.D. Cal., Mar. 28, 2018) (dismissing TCPA claim against Yelp where complaint alleged that texts were sent by user of Yelp platform, and did not allege that Yelp decided whether, when or to whom to send messages).

---

[1]      Perrong also states plausible claims against Chase Data under a vicarious liability theory. "[T]he Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations."  *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) (citing *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574 (F.C.C. 2013)). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Restatement (Third) Agency § 1.01 (Am. Law Inst. 2006).  An agency relationship can be established through actual authority, apparent authority, or ratification.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Dobkin v. Enterprise Financial Group, Inc.*, No. 2:14-cv-01989, 2014 U.S. Dist. LEXIS 123317, 2014 WL 4354070 at *4 (D.N.J. Sept. 3, 2014) (quoting *Covington*, 710 F.3d at 120).

The allegations that Chase Data owned and operated the phone numbers used for the calls, and worked closely with its purported clients in placing the calls, give rise to an inference that it had actual authority to act on Chase's clients' behalf.

B

Defendants argue all claims against Dialed In must be dismissed for lack of

jurisdiction[2] and failure to state a claim, since Dialed In was not incorporated until ten

months after the alleged messages were received and it is therefore "factually and

legally impossible" for Dialed In to be held liable.  (Chase Data and Dialed In Am. Mot.

to Dismiss, p. 15).

1

To assert successor liability, Perrong "must adequately plead facts that could

raise such an inference of successorship. This is true under either Rule 12(b)(2) or Rule

12(b)(6)." *Metro Container Grp. V. AC&T Co.*, 450 F.Supp.3d 583, 604 (E.D. Pa. 2020)

(*vacated on other grounds*, *Metro Container Grp. v. AC&T Co.*, No. 18-cv-36232020, U.S.

Dist. LEXIS 101011 (E.D. Pa June 8, 2020)).  To state a claim for successor liability, "a

plaintiff must allege one of the following: (1) the purchaser assumed liability, (2) the

transaction amounted to a consolidation or merger, (3) the transaction was fraudulent

---

[2]     Defendants contend the Court does not have personal jurisdiction over Dialed In and
Macklai—a Florida corporation and officer of that corporation, respectively—because the text
messages "are insufficient to establish minimum contacts" with the state of Pennsylvania. (Macklai
Mot. to Dismiss, pp. 5–7; Chase Data & Dialed In Am Mot. to Dismiss, pp. 12–14).  The Court
disagrees.

        "District courts across the country have found purposeful direction based on allegations a
defendant sent its telemarketing call to a number bearing the state's area code." *Abramson v. CWS
Apartment Homes, LLC*, No. 16-426, 2016 WL 6236370, at *4 n.47 (W.D. Pa. Oct. 24 2016) (collecting
TCPA cases imposing specific personal jurisdiction).  Defendants—who work closely with customers
to make calls and texts—targeted a telephone with a Philadelphia area code, owned by a
Pennsylvania resident.  Accordingly, Defendants purposefully directed their calls to Pennsylvania.
*Compare with Lacon v. Education Principle Found.*, No. 2:21-cv-03957, 2022 WL 2240074, *3 (E.D.
Pa., June 22, 2022) (finding a business that sold leads to telemarketers did not make sufficient
contact with Pennsylvania because the business did not "supervise or direct companies that made
those calls, or even monitor whether those companies made calls at all.").

and intended to provide an escape from liability, or (4) the purchasing corporation is a mere continuation of the selling company." *Id.* (citing *U.S v. General Battery Corp.*, 423 F.3d 294, 305 (3d Cir. 2005).

## 2

Perrong does not allege any of these theories of liability.  In his response to Dialed In's motion, Perrong argues Dialed In may be liable under theories of successor liability and details how Dialed In is a continuation of Chase Data.  (Resp. to Chase Data and Dialed In's Am. Mot. to Dismiss, pp. 8-10, ECF No. 19)  But a complaint may not be amended by the briefs in opposition to a motion to dismiss. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo*, 836 F.2d 173, 181 (3d Cir. 1988).

## C

Finally, Defendants move to dismiss all claims against Macklai, arguing, *inter alia,* that he cannot be held personally liable under the TCPA. (Macklai Mot. to Dismiss, p. 10, ECF No. 16).

## 1

As an initial matter, Perrong's allegations about Macklai are conclusory; he merely recasts his allegations against Chase Data as instances where Macklai was "personally" involved.  (Am. Compl. ¶ 45).  *See Cunningham v. Capital Advance Sols., LLC,* No. 17-cv-13050, 2018 U.S. Dist. LEXIS 197590*, *13–14 (D.N.J., Nov. 20, 2018)

(dismissing "generic, conclusory statements" that presumed defendants authorized and directed telemarketing calls "based solely upon their status as corporate officials.").

But even if Perrong properly alleged sufficient facts, his claims for personal liability would be barred.  The Third Circuit Court of Appeals has raised "doubt" as to whether "common-law-personal participation liability is available against corporate officers under the TCPA."  *City Select Auto Sales, Inc.*, 885 F.3d 154, 160 (3d Cir. 2018).  The court's opinion noted that because "Congress has demonstrated in many statutes that it 'kn[ows] how to impose' personal-participation liability 'when it cho[oses] to do so,' the argument that Congressional silence indicates such an intent is a weak one at best."  *Id.* at 161 (quoting *Cent. Bank of Denver N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176–77 (1994)) (alterations in the original).

Since *City Select*, courts in this circuit have found that "a corporate officer is not liable under the TCPA common law personal liability principles."  *KHS Corp. v. Singer Fin. Corp*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019) (finding no personal liability although defendant "personally directed and participated in" a TCPA violation); *see also Kline v. Advanced Ins. Underwriters, LLP*, No. 1:19-cv-00437, 2020 U.S. Dist. LEXIS 110453, *19 (M.D. Pa., June 23, 2020) (noting personal liability for corporate officers does "not appear to be a cognizable theory of liability under the TCPA.").  All claims against Macklai are dismissed accordingly.

## V

A court should grant a plaintiff leave to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This rule expresses "a preference for liberally

8

granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile.*" Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The decision of whether to grant or deny leave to amend is within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted).

Granting leave to amend would not cause undue delay or prejudice and Perrong will be given an opportunity to amend his claims against Dialed In to the extent he can allege facts which address the shortcomings identified in this Memorandum. The claims against Macklai, however, cannot be salvaged.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.