**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANDREW R. PERRONG

       Plaintiff,

    vs.

CHASE DATA CORP. AND DIALED IN INC

    Defendants.

Case No. 2:22-cv-02628-GJP

**Plaintiff's Response in Opposition To Defendant**
**Dialed In Inc's Motion to Dismiss**

i

## I.    INTRODUCTION

Defendant Dialed In's motion to dismiss, for the most part, rehashes arguments Defendant made in its original motion that the Court rejected. Specifically, the Court (correctly) held that the Plaintiff did not adequately plead successor liability in the operative complaint, held that the plaintiff could not allege such theories in response to his motion to dismiss, and granted leave to amend. The Plaintiff has done so, demonstrating in his pleadings facts sufficient to allow the Court to draw the inference that Dialed In is a mere successor of Defendant Chase Data. Despite these clear pleadings, Defendant Dialed in has refiled much the same motion as it did before. This renewed motion must be denied.

## II.    FACTUAL BACKGROUND

The original complaint in this matter was filed on July 1, 2022 against the John Doe entity "personal injury lead generator." (ECF No. 1). Shortly thereafter, the Plaintiff was able to identify the instant Defendants via a duly issued and served subpoena to their telephone service provider. Defendants did not respond to a subpoena issued to them to uncover the identity of any of their customers for whom they provided telemarketing platform services. Thereafter, and as a result of this wilful failure to comply with a lawfully issued subpoena, the Plaintiff sought leave to and amended his complaint on October 11, 2023 to assert claims against Defendants on a theory of platform provider liability under the TCPA. (ECF No. 10). Defendant Dialed In brought a motion to dismiss, which was granted with leave for the Plaintiff to amend to add claims of successor liability. (ECF No. 22). The Plaintiff did so. (ECF No. 25, ¶ 2, 41–47). The instant motion follows.

### III.   LEGAL STANDARD

The standard for a motion to dismiss under Rule 12(b)(6) is well-established before this Court. Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

### IV.   ARGUMENT

A.   *Dialed In is the successor to Defendant Chase Data and is liable for Chase Data's conduct because it is the "mere continuation" of Chase Data.*

Defendant starts by arguing that the Plaintiff's claims must be dismissed because the alleged conduct predates Dialed In's incorporation. That may be so, but that's a red herring.

Defendant cites to *no authority* for the proposition that, as a matter of law, a successor company may not be held liable for the predecessor's conduct when the successor company did not exist at the time of the alleged misconduct, nor can it. Were that the law, any company facing a lawsuit would simply close up shop, transfer all its assets and operations into a brand-new successor, and continue to conduct business as usual without repercussions. It is for this very reason that successor liability exists. And, as explained below, it is clear that the Plaintiff has pled sufficient facts to demonstrate that Dialed In is the successor of Chase Data under Pennsylvania (and Florida) law.

As this Court stated, the Plaintiff "must adequately plead facts that could raise such an inference of successorship." (ECF No. 22, citing *Metro Container Grp. v. AC&T Co.*, 450 F.Supp.3d 583, 604 (E.D. Pa. 2020)). To state a claim for successor liability, "a plaintiff must allege one of the following: (1) the purchaser assumed liability, (2) the transaction amounted to a consolidation or merger, (3) the transaction was fraudulent and intended to provide an escape from liability, or (4) the purchasing corporation is a mere continuation of the selling company." *Id.*

Both Pennsylvania and Florida law impose liability on a successor business entity under a "continuation of business" theory. Under this theory, the liabilities of a predecessor corporation can be imposed upon a successor corporation when the successor is a "mere continuation" of the predecessor. *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308 (3d Cir. 1985); *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982). In determining whether a successor company is a continuation of a predecessor company, the Third Circuit looks to multiple factors, including whether or not there is a "continuity of management, personnel, physical location, assets, and general business operations" between both companies. *Berg Chilling Sys., Inc. v. Hull*

3

*Corp.*, 435 F.3d 455, 468 (3d Cir. 2006); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 650 (5th Cir. 2002). The Third Circuit will also consider whether the seller corporation ceased its ordinary business operations and if the purchasing corporation consequently picks up where the seller left off in taking steps "ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." *Berg*, 435 F.3d at 468–69.

In sum, Defendant's entire argument rests on a faulty premise that conflates an *agency* analysis under the TCPA as to who "initiated" a call with a *successorship* analysis described above, which is a general principal imposing liability on a successor company for the predecessor's acts when one of the four allegations articulated by the Third Circuit in *General Battery* and *Berg Chilling*, and as cited by both this Court and the Court in *Metro Container*. Moreover, the Defendant's faulty argument that this Court cannot find agency because the calls at issue were allegedly placed through another third party have already been rejected by this Court. (ECF No. 22 at n.1) ("Perrong also states plausible claims against Chase Data under a vicarious liability theory. . . . The allegations that Chase Data owned and operated the phone numbers used for the calls, and worked closely with its purported clients in placing the calls, give rise to an inference that it had actual authority to act on Chase's clients' behalf.").

And the Third Circuit has indicated that the "key element" of the "mere continuation" doctrine is a "common identity of stock, directors and stockholders in the selling and purchasing corporations," but also stated that this requirement is not mandatory. *Berg*, 435 F.3d at 468–69; *Tracey by Tracey v. Winchester Repeating Arms Co.*, 745 F. Supp. 1099, 1110 (E.D. Pa. 1990), aff'd, 928 F.2d 397 (3d Cir. 1991) (citing cases). In sum, a corporation is a "mere continuation" of a predecessor when there is essentially the same "identity of assets, location, management, personnel, and stockholders." *Id.; Patin*, 294 F.3d at 650.

Moreover, no conflict of laws analysis is necessary since the standard for the "mere continuation" is essentially the same under the common law of both jurisdictions. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (holding that the first step in a conflict of law analysis requires determination of whether an actual or real conflict exists between the laws of the jurisdictions at issue).

Here, there can be no question that Plaintiff has plausibly alleged in his complaint that Defendant Dialed In is the "mere continuation" of Defendant Chase Data. (Am. Comp'l., ECF No. 25, ¶ 2). This fact is readily ascertainable from an identical "identity of assets, location, management, personnel, and stockholders." in the form of Dialed In's own information and declarations, as evidenced through the allegations in the Plaintiff's Amended Complaint. Such allegations, which show a common identity of "assets, location, management, personnel, and stockholders," are plainly sufficient at the pleadings stage to demonstrate that a corporation is a mere continuation of the other. *Patin*, 294 F.3d at 650.

Indeed, as a preliminary matter, Chase Data's website, chasedatacorp.com, simply operates as a "redirect" to getdialedin.com. (ECF No. 25, ¶ 44). In other words, when anyone (including this Court) types "chasedatacorp.com" into their internet browser, they are immediately taken to getdialedin.com, the website for Defendant Dialed In. Moreover, that website lists the same physical address, lending credence to the fact that Dialed In picked up where Chase Data left off. (*Id.*). Furthermore, as reproduced in the Amended Complaint prominently  displayed on that website is a logo stating "DialedIn by ChaseData.:"

(ECF No. 25, ¶ 45) (citing *DialedIn, Inbound and Outbound Call Center Solutions,* DIALEDIN, https://getdialedin.com/ [https://archive.is/wyX4V]).

That Plaintiff has adequately pled that Dialed In is a "mere continuation" of Defendant Chase Data is further confirmed though the Amended Complaint's analysis of Dialed In's "About Us" page. Here, Dialed In states that "DialedIn", "formerly ChaseData" has been "focused on designing . . . call center software . . . for two decades." (ECF No. 25, ¶ 46) (citing *Learn More About DialedIn Software*, DIALEDIN, https://getdialedin.com/about/ [https://archive.is/cMvSH]). How a less than a year-old corporation can design software for two decades is a mystery to Plaintiff, unless of course Dialed In is a mere continuation of Defendant Chase Data. Defendant's website admits the obvious.

As the Court held in *Patin*, a common identity of "assets, location, management, personnel, and stockholders," are plainly sufficient at the pleadings stage to demonstrate that a corporation is a mere continuation of the other. *Patin*, 294 F.3d at 650. Here, the Plaintiff has pled that the Defendants' directors and "team" are identical, further supporting the inevitable conclusion that Dialed In is the "mere continuation" of Chase Data. (ECF No. 25, ¶ 46) (*comparing Learn More About DialedIn Software*, DIALEDIN, https://getdialedin.com/about/ [https://archive.is/cMvSH] (listing Defendant Macklai along with Stanislav Doronin, Guillermo Sandoval, and Dan Cleary) *with Learn More About ChaseData Corp Software*, INTERNET ARCHIVE (archived December 5, 2022), https://web.archive.org/web/20221205122217/https://www.chasedatacorp.com/about (listing

same individuals)). The Plaintiff has also demonstrated how the other content on this page is also identical, including, the website design, layout, and content, merely cutting and replacing "ChaseData" for "DialedIn" at various locations. (*Id.*).

This additional evidence of the directors and organizational structure of both entities, which is not required of Plaintiff, but which Plaintiff has nevertheless provided at the pleadings stage, demonstrates, or at the very least gives rise to the inference, that there is a "common identity of the officers, directors, and stockholders in the selling and purchasing corporations." *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1459 (11th Cir. 1985). This is so beyond the other evidence presented in the Amended Complaint, which further demonstrates that Dialed In is a mere continuation of Chase Data based on evidence of a "basic continuity of enterprise." *Rivers v. Stihl, Inc.*, 434 So. 2d 766, 771 (Ala. 1983) (citing cases).

Defendant's citations to *Buck v. Endo Pharms., Inc.* and *Gentry v. Sikorsky Aircraft Corp.* do not alter this conclusion merely because Defendant Chase Data exists on paper. Here, the Plaintiff has pled facts which tend to show that Dialed In is the successor of Chase Data and that Dialed In, to the extent it exists at all, exists as such only on paper. Not only is there an identity of business operations and ownership, but the Chase Data website *is no longer active.* (ECF No. 25, ¶ 44). When one types chasedatacorp.com into their browser, they are transferred to Defendant's website which included the same information as the Chase Data website formerly did. It defies logic that a company whose entire business it is to provide an internet-based dialing platform for telemarketers to blast robocalls throughout the country, would lack a website whereby customers could even go to in order to access their services and submit requests, including support requests Chase Data.

On this point, the aforementioned cases cited by the Defendant are distinguishable. In *Buck*, the Defendant, Endo Pharmaceuticals, purchased all of an entity named American Medical's stock and made it a "wholly-owned subsidiary of Endo." *Buck*, 2019 WL 1900475, at *1. In essence, the "continuation" alleged by the Plaintiff consisted of a larger company acquiring a smaller company, a legitimate, arms-length transaction that occurs all the time in corporate America. However, *unlike here*, Endo "did not make American Medical a division of its business," and American Medical continued to manage its own affairs and operate its own day to day operations independently, and on that basis the district court held that the Plaintiff inadequately pled successorship. *Id.* The exact *opposite* happened here, where the logo on the website indicates that Dialed In is "by Chase Data," indicating that Dialed In is a division of Chase Data's business. (ECF No. 25, ¶ 45).  Moreover, no facts here indicate that Chase Data continues to operate its own daily operations independently, particularly because *it lacks the necessary organs to do so*: a website or an address.

Counsel for the Defendant also misconstrues *Gentry*, a case which does not even *address* successor liability but was rather a diversity of citizenship case. There, the district court was asked to consider whether mere registration in Pennsylvania of fictitious names of corporations was sufficient to render such corporations "residents" of Pennsylvania for diversity of citizenship purposes. *Gentry*, 383 F. Supp. 3d 442, 453. The court disregarded them for diversity purposes because such non-fictitious corporations were incorporated and had their principal places of business outside Pennsylvania. *Id.*

By contrast to the aforementioned cases, the Pennsylvania Supreme Court's decision in *Schmidt v. Boardman Co.*, remains particularly instructive because it shows that successorship can also be established by through a showing of the continuation of a product or a product line,

8

just as the Plaintiff alleges in his complaint with respect to the very same call center software and services sold by the Defendants. (ECF No. 25, ¶ 47). In *Schmidt*, the Pennsylvania Supreme Court upheld the Court of Common Pleas' jury verdict and jury instructions which found a successor company liable for a defective product on a product continuation theory. *Schmidt v. Boardman Co.*, 11 A.3d 924, 931 (Pa. 2011).

In so holding, the Pennsylvania Supreme Court cited favorably to the Superior Court's decision in *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106, 110 (Pa. Super. 1981), where the Superior Court held that successor liability may be imposed on a company that continues to manufacture and sell a defective product. There, Court said:

> Where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

Here, the Plaintiff has alleged that Chase Data and Dialed In sell the same product: call center software used to robocall people, that was designed by the same individuals "for two decades." (ECF No. 25, ¶ 47). Thus, the Plaintiff has adequately pled facts which support a finding that Dialed In acquired all or substantially all of the intellectual property and software of another company, Chase Data. To be sure, the Plaintiff will need to prove that he was in fact injured by the "same product line." However, at the pleadings stage, the Plaintiff has pled facts which tend to show that Dialed In provides the very same software and support that Chase Data did, including by engaging in such practice by design to hide the true identity of the customers using the same "turnkey solution." (ECF No. 25, ¶ 41). Accordingly, this Court can hold that Dialed In is additionally liable on a successor theory because Chase Data and Dialed In sold the same product and provided the same services in connection therewith.

Finally, the Defendant's entire motion is premised on a problem of its own devising manufactured by itself. Specifically, the Plaintiff pled that, when Defendant Dialed In was asked of the nature of its business operations in response to an interrogatory, it refused to respond, stating it "objects to providing information regarding its business operations as proprietary, confidential, not relevant, and unduly burdensome" and that "information relating to DialedIn and its business operations has no bearing on the issues in dispute in this case." (ECF No. 25, ¶ 42). It cannot now claim that its own refusal to do so should mean that it wins because the Plaintiff has failed to plead sufficient facts such as to demonstrate successorship at the pleadings stage. Indeed, this Court should construe the Defendant's own refusal to respond as evidence against it and show that the issue of successorship must be fleshed out in discovery.

In sum, then, there is no question that Dialed In is the mere continuation of Chase Data. It is therefore liable for the tortious conduct described in the complaint, just as if it had been committed by Dialed In itself, and not just by Chase Data. This Court should reject Dialed In's attempt to escape liability through a smoke-and-mirrors game of corporate sophistry which ignores the sufficient facts pled in the Plaintiff's complaint demonstrating that Dialed In continued in harassing telephone consumers throughout the United States where Chase Data left off, including with the same product. In the event this Court remains unsatisfied based on this overwhelming evidence, the Court should order discovery into the nature and structure of how Dialed In is not "formerly" Chase Data.

## V.   CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies one final time or permit structural discovery, as necessary.

Dated: March 15, 2024

/s/ Andrew R. Perrong
Andrew R. Perrong, Esq.
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing via ECF on the below date, which will automatically

send a copy to all attorneys of record on the case.

March 15, 2024

/s/ Andrew R. Perrong
Andrew R. Perrong, Esq.
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

11